IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SIOLIMI MAFUA,<br><br>Plaintiff<br><br>v.<br><br>KENT B. MCKENZIE; KLOEPFER, INC.; and DOES I–X,<br><br>Defendants | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT KLOEPFER, INC.'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 1:18-cv-00064-HCN<br><br>Howard C. Nielson, Jr.<br>United States District Judge |

Plaintiff Siolimi Mafua was injured when a commercial truck driven by Defendant Kent B. McKenzie collided into the rear of Plaintiff's vehicle. McKenzie failed to notice that traffic in front of him had slowed, and he collided with Mafua while traveling more than seventy miles per hour. McKenzie is employed by Defendant Kloepfer, Inc.

Plaintiff alleges that Kloepfer is vicariously liable for McKenzie's negligence under the doctrine of respondeat superior. In addition, Plaintiff alleges that Kloepfer is liable for its own negligence in hiring and supervising McKenzie and in entrusting him with a company truck. Kloepfer has moved for summary judgment on each of Plaintiff's claims. For the reasons that follow, the court grants the motion for summary judgment as to Plaintiff's respondeat superior and negligent hiring claims but denies the motion as to the negligent supervision and negligent entrustment claims.

# I.

Viewed in the light most favorable to Plaintiff (the nonmoving party), *see Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005), the facts are as follows.

On December 15, 2017, McKenzie was traveling southbound on I-15. Pl. Comp. at ¶¶ 8. McKenzie was driving a Ford F-350 pickup truck owned by Kloepfer. Pl. Comp. at ¶¶ 12 and 16; McKenzie Depo. at 68:19–69:23 ("Defendant's Exhibit 1"). McKenzie failed to notice that traffic had slowed because of congestion and hit Plaintiff's vehicle from behind while traveling more than 70 miles per hour. Pl. Comp. at ¶ 13; Pl. Opp. Mot. at ¶ 28.

At the time of the I-15 collision, McKenzie was not performing work for Kloepfer. Def. Ex. 1 at 58–61 He was driving from Twin Falls, Idaho, to his daughter's house in Syracuse, Utah, to deliver personal Christmas presents. *Id.* at 59. McKenzie was able to use a company vehicle for this personal errand because of "special privileges" that allowed him, as well as other select Kloepfer employees, to drive company vehicles not only for work but also for unrestricted personal use. Def. Ex. 1 at 21:22–25; 22:1–24; and 23:9–24:14.

Kloepfer did not suspend, terminate, or reprimand McKenzie following the collision. Def. Ex. 1 at 28:5–25; 119:9–13; and 125:10–17; Landrum Depo. at 29:20–24 and 31:7–9 ("Defendant's Exhibit 2"). Kloepfer did withhold a six-month, $100 safety bonus. Def. Ex. 1 at 28:5–25; Def. Ex. 2 at 29:20–24. Kloepfer repaired the F-350 (at the company's expense) and returned it to McKenzie, who retained his special driving privileges. Def. Ex. 1 at 28:5–25; 119:9–13; and 125:10–17. Kloepfer did not require McKenzie to be retrained or to take additional driver safety classes. *Id.* at 28:5–25; 119:9–13; and 125:10–17.

Prior to the I-15 collision, Kloepfer knew that McKenzie had been involved in a series of moving violations, including a serious at-fault collision for which he received a traffic citation.

Def. Ex. 1 at 27:17–28:4. The at-fault collision occurred on March 25, 2016. *Id*. McKenzie was driving the same company-owned F-350 truck and made an improper left turn, failing to yield to—and colliding with—an oncoming vehicle. *Id.* at 24:24–25:12 and 26:13–15. McKenzie's supervisor arrived on scene immediately following the accident. *Id.* at 27:17–28:4. McKenzie was cited by the authorities for failing to yield the right of way. Def. Ex. 1 at 25:4–14. After the March 2016 collision, Kloepfer withdrew a six-month, $100 safety bonus but took no further disciplinary action. Def. Ex. 1 at 28:5–25; Def. Ex. 2 at 29:20–24. Kloepfer did not require McKenzie to be retrained or to take additional safe driving classes. Def. Ex. 1 at 28:5–25; 119:9–13; and 125:10–17. McKenzie received back the F-350 after it had been repaired by Kloepfer at the company's expense and retained his special driving privileges. Def. Ex. 1. at 28:5–25; 119:9–13; and 125:10–17. Kloepfer was also aware that McKenzie had received citations for two additional moving violations. Oral Argument 6:06–6:48. At some point in 2016, McKenzie was cited for failing to stop at a stop sign. Pl. Ex. D: Idaho's Interactive Drivers License Record for Kent McKenzie. And on November 28, 2016, McKenzie was cited for speeding. *Id.*

In addition to these moving violations, McKenzie had backed his company-owned F-350 truck into a light pole at a job site on May 14, 2014. Pl. Supplemental Ex. A (Dk. 27). This incident involved only a single vehicle and did not occur on a public roadway. *Id.* Kloepfer was of course aware of this incident prior to the I-15 collision as well. *Id.*

## II.

Summary judgment is appropriate when the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court must view the factual record and draw all

reasonable inferences in the manner most favorable to the nonmoving party. *See Adler v. Wal-Mart Stores*, 144 F.3d 664, 670 (10th Cir. 1998).

**III.**

The parties agree that Utah law governs this diversity action. As noted above, Kloepfer seeks summary judgment on Plaintiff's claims for (1) vicarious liability under the doctrine of respondeat superior, (2) negligent hiring, (3) negligent supervision and training, and (4) negligent entrustment. The Court addresses each claim in turn.

**A.**

To establish that an employer is vicariously liable for its employee's acts under the respondeat superior doctrine, a party must establish that the employee's conduct was (1) "of the general kind the employee is employed to perform" and (2) "motivated, at least in part, by the purpose of serving the employer's interest." *Salo v. Taylor*, 417 P.3d 581, 589 (Utah 2018).[1] Here, the undisputed facts show that McKenzie was driving from Twin Falls, Idaho, to Syracuse, Utah, to deliver Christmas presents to his daughter. Delivering personal presents is obviously not the general kind of conduct that McKenzie is employed to perform as a project manager for Kloepfer, an asphalt and paving company. It is also undisputed that McKenzie was not in any part motivated by the purpose of serving Kloepfer's interest on this trip. Plaintiff thus fails to establish a prima facie case of respondeat superior liability.

---

[1] Relying on *Birkner v. Salt Lake County*, 771 P.2d 1053, 1057 (Utah 1989), Kloepfer asserts that the employee's conduct must also occur "within the hours of the employee's work and spatial boundaries of employment." Def. Mot. at 4. But in more recent decisions, the Utah Supreme Court has repudiated this requirement "on the grounds that spatial and time boundaries are no[t] . . . essential hallmarks of an agency relationship." *Salo*, 417 P.3d at 589 n.4 (Utah 2018) (quoting *M.J. v. Wisan*, 371 P.3d 21, 31 (Utah 2016)).

Rather than disputing this, Plaintiff argues that, pursuant to the law of agency, an employer can be liable for an employee's tortious conduct that falls outside the scope of the employee's actual authority if that conduct is ratified by the employer. Pt. Opp'n at 12–13. Plaintiff argues that Kloepfer has ratified McKenzie's tortious conduct in this case.

*Dillon v. S. Mgmt. Corp. Ret. Tr.*, 326 P.3d 656 (Utah 2014), the case on which Plaintiff relies, demonstrates that Plaintiff cannot prevail on a ratification theory here. In *Dillon*, the Utah Supreme Court held that "an essential fact . . . implicit to a finding of ratification is the principal's knowledge than an individual has acted purportedly on behalf of the principal or as the principal's agent." *Id.* at 665.

Plaintiff's theory is that by not disciplining McKenzie after the I-15 collision, Kloepfer ratified his tortious conduct.[2] Pt. Opp'n at 15–17; *see also* Oral Argument 26:04–30:12. This is wrong for three reasons. First, at the time of the collision, McKenzie was not purporting to act on behalf of Kloepfer. To the contrary, he was delivering Christmas presents to his daughter on a personal trip. Second, Plaintiff cites no authority holding that failure to discipline constitutes ratification, and courts have rejected that proposition. *See, e.g.*, *McCann v. Miller*, 502 Fed. App'x 163, 169–170 (3d Cir. 2012); *Capalbo v. Goldenberg*, 1994 WL 373188 (Conn. Super. Ct. July 7, 1994) ("The mere failure to discipline or demote an employee . . . is not enough to establish a ratification claim. These acts must be done with the intent to ratify the prior action

---

[2] Plaintiff initially argued that actions taken by Kloepfer *before* the I-15 accident should also be considered in determining whether Kloepfer had ratified that accident. *See* Oral Argument 25:37-26:42. Plaintiff subsequently acknowledged, however, that ratification turns on Kloepfer's conduct *after* the I-15 accident. *See id*. 26:45-26:55. The court agrees that actions taken by Kloepfer before this accident could not establish ratification of his involvement in that accident given the undisputed facts here.

5

taken by the agent[.]"). Finally, Kloepfer did discipline McKenzie by revoking his $100, six-month safety bonus. Pl. Opp'n Mot. at 10.

Plaintiff also argues that Kloepfer may be held liable for McKenzie's negligence because the company's name was painted on the vehicle and because McKenzie was required to follow company policy while driving it. Pl. Opp'n Mot. at 12–15. Plaintiff cites no authority finding a company vicariously liable based on the fact that its name appears on a vehicle driven by an employee for personal use and persuasive authority appears to reject vicarious liability on similar facts. *See, e.g.*, *Sharp v. Egler*, 658 F.2d 480, 486–87 (7th Cir. 1981) (concluding that a dealer sticker on a company car did not provide enough benefit to employer to place employee driving the car for personal use within the scope of employment at the time of accident); *Nulle v. Krewer*, 872 N.E.2d 567, 571 (Ill. App. 2007); *Atlanta Blue Print & Photo Reproduction Co. v. Kemp*, 204 S.E.2d 515, 516 (Ga. App. 1974). Plaintiff has likewise failed to identify any authority holding that a company's car policy can expand the rights of third parties such as Plaintiff here. *Cf. Lane v. Messer*, 731 P.2d 488, 491 (Utah 1986) (Opinion of Howe., J.) (rejecting this proposition).

For these reasons, the court grants Kloepfer's motion for summary judgment on Plaintiff's respondeat superior claim.

**B.**

Even if an employer is not vicariously liable for an employee's negligence under the doctrine of respondeat superior, the employer may still be "directly liable for its [own] acts or omissions in hiring or supervising its employees." *J.H. v. West Valley City*, 840 P.2d 115, 124 (Utah 1992); *accord Clover v. Snowbird Resort*, 808 P.2d 1037, 1048 (Utah 1991). The Utah Court of Appeals has favorably cited Black's Law Dictionary's definition of "negligent hiring"

6

as "[a]n employer's lack of care in selecting an employee who the employer knew or should have known was unfit for the position, thereby creating an unreasonable risk that another person would be harmed." *Castellanos v. Tommy John, LLC*, 321 P.3d 218, 234 (Utah Ct. App. 2014) (citing Black's Law Dictionary 1135 (9th ed. 2009)) (modification in original).

In *J.H.*, the plaintiff alleged that he had been sexually abused by Police Officer Jene Lyday while participating in a youth program organized by West Valley City and supervised by Lyday. *See* 840 P.2d at 117. Plaintiff alleged that the City had been negligent in hiring Lyday and putting him in charge of this program without adequate supervision. *See id*. In affirming summary judgment for the City on the plaintiff's negligent hiring claim, the Utah Supreme Court reasoned that the plaintiff had "produced no evidence that [the City] knew or had reason to know that Lyday had deviant characteristics that would make him a risk as a police officer or while working with youths." *Id.* at 124.

Here as well, Plaintiff has produced no evidence that Kloepfer knew or had reason to know of any problem with McKenzie's driving *before* it hired McKenzie. *See J.H.*, 840 P.2d at 124 ("[P]laintiff has not produced any evidence to create a factual issue as to whether Lyday's problem even existed prior to the time he was hired by West Valley . . . ."). The only evidence Plaintiff offers is that Kloepfer knew that McKenzie had been convicted of felony fraud in 2008. Pl. Opp'n at 3. As a matter of law, the court finds this insufficient to support a finding that Kloepfer knew or should have known that McKenzie was an unfit driver at the time he was hired and thus by hiring him created an unreasonable risk that Plaintiff (or others) might be harmed in a vehicular collision. *Cf.* Oral Argument 32:00–33:45 (acknowledgement by Plaintiff's counsel that McKenzie's felony fraud conviction does not "get us there" under a negligent hiring theory).

The court accordingly grants Kloepfer's motion for summary judgment on the Plaintiff's negligent hiring claim.

## C.

An employer may be liable under a negligent supervision or training theory if the "employer could reasonably be expected, consistent with the practical realities of an employer-employee relationship, to appreciate the threat to a plaintiff of its employees' actions and to act to minimize or protect against that threat." *Jackson v. Righter*, 891 P.2d 1387, 1392 (Utah 1995).

*Clover v. Snowbird Resort*, 808 P.2d 1038 (Utah 1991) is instructive here. The plaintiff in that case was injured by an off-duty Snowbird employee while skiing at Snowbird Ski Resort. *Id*. at 1039 (Utah 1991). The employee, who was skiing using a free season pass provided by Snowbird, collided with the plaintiff after taking a jump that contained a significant drop-off rendering it impossible for skiers above the crest to see skiers below. *Id.* The plaintiff brought suit against Snowbird, claiming, *inter alia*, that Snowbird had failed to supervise its employees adequately. *Id.* In support of that contention, the plaintiff provided evidence that "Snowbird furnished its employees with ski passes as partial compensation for employment, was aware of the dangerous condition created by the jump, and was aware that its employees often took the jump, but did not take any measures to alleviate the dangers." *Id*. at 1048. The Utah Supreme Court found that the plaintiff had presented sufficient evidence to proceed to trial on that claim. *See* 808 P.2d at 1039, 1048; *see also Moradian v. Deer Valley Resort Company*, 2012 WL 3544820 at *6 (D. Utah Aug. 16, 2012) ("In *Clover*, there was ample evidence presented to create a material issue of fact regarding the defendant's failure to train and supervise its employees.").

Here, the court concludes that a jury could reasonably find that McKenzie was a frequently inattentive and potentially dangerous driver, that Kloepfer knew or should have known of the threat posed by McKenzie's driving, and that Kloepfer failed to supervise McKenzie in a manner that would protect Plaintiff (and others) against this threat. It is undisputed that during a 31 month period, McKenzie had been involved in two collisions—a serious at-fault collision as well as a workplace driving accident—and had received traffic citations for the at-fault collision as well as for speeding and ignoring a stop sign.[3] A reasonable jury certainly could dismiss these incidents as nothing more than bad luck (or, perhaps more accurately, a string of bad luck). But the court believes that a jury could also reasonably find in them a pattern of carelessness.

A reasonable jury could also conclude that Kloepfer knew or should have known of McKenzie's proclivity for careless driving. As the record demonstrates and as Kloepfer's counsel admitted at oral argument, Kloepfer's senior management was aware of McKenzie's prior citations and his supervisor was on-scene immediately after the at-fault collision. No doubt Kloepfer was also aware that McKenzie had backed his company pickup truck into a light pole at a worksite.

Finally, a reasonable jury could find that the steps taken by Kloepfer in response to these incidents failed adequately to protect third parties from the risks posed by McKenzie's driving.

---

[3] Plaintiff has submitted supplemental exhibits documenting numerous complaints lodged with Kloepfer by members of the public against Kloepfer employees for improper cell-phone use while driving. Given that none of the complaints appears specifically to identify McKenzie as the offender and that Kloepfer employs more than thirty drivers, the court does not consider this evidence for purposes of deciding the motion for summary judgment. The court does not address whether these complaints could be admitted as relevant evidence at trial under the lenient standard of Federal Rule of Evidence 401.

Kloepfer issued no warnings, required no special training, and made no other response to any of the incidents other than revoking a $100 safety response after the at-fault collision. At all times McKenzie remained one of the select few Kloepfer employees allowed to drive company vehicles for unrestricted personal use. And except for a brief period after the at-fault collision while the vehicle was repaired at Kloepfer's expense, McKenzie retained continuous access to the company-owned F-150, a commercial vehicle weighing over 10,000 gross pounds and therefore subject to Department of Transportation regulations.

To be sure, the court agrees with Kloepfer that the I-15 collision occurred outside the scope of McKenzie's employment. But the accident occurred while McKenzie was exercising special privileges that allowed him unrestricted personal use of a company truck. A reasonable jury could conclude that these special privileges, like the ski passes in *Clover*, were a benefit provided by Kloepfer as partial compensation for McKenzie's employment and that Kloepfer, like the employer in *Clover*, was cognizant of the dangers posed to others by its employee's personal use of the benefit it had provided. Thus, as in *Clover*, this court declines to reject the "negligent supervision claim on the ground that an employer does not have a duty to supervise an employee whose actions are outside the scope of employment." 808 P.2d at 1048.

The court denies the motion for summary judgment on Plaintiff's negligence supervision claim.

**D.**

Under Utah law, "an automobile may be regarded as [a dangerous instrumentality] in the hands of an incompetent driver, and an owner thereof who knowingly entrusts its operation to such a driver is liable, even in the absence of statute, for the proximate consequences of its operation in such hands." *Herland v. Izatt*, 345 P.3d 661, 670 (Utah 2015) (citations and internal

quotation marks omitted); *see also* Model Utah Jury Instructions (2d), § 631. The Utah Supreme Court has made clear that a claim for negligent entrustment may lie against an employer that allows its employee to use a motor vehicle for personal reasons outside the scope of his or her employment. *See id.*

As explained above, a jury could reasonably find that McKenzie was a frequently careless and potentially dangerous driver. Although it is a close question, the court concludes that a jury could also reasonably find, based on the same undisputed series of accidents and traffic violations, that McKenzie was an "incompetent" driver as that term has been understood by the Utah courts. As further explained above, a reasonable jury could find that Kloepfer knew or should have known of the risks posed by McKenzie's driving. Kloepfer nevertheless entrusted him with special privileges to drive a 10,000-pound commercial truck for unrestricted personal use. A reasonable jury could accordingly find that Kloepfer is responsible for the proximate consequences of entrusting McKenzie with this vehicle.

Relying on out-of-State precedent, Kloepfer argues that "[o]ne prior accident, standing alone . . . is not substantial evidence of incompetence." *Trinidad v. Moore*, 2016 WL 7423398 (M.D. Ala. Dec. 22, 2016). But here, of course, McKenzie had not only been cited for one serious at-fault collision, he had also been involved in a workplace collision and received citations for speeding and ignoring a stop sign—all within a 31-month period.

Kloepfer also cites Alabama precedent for the proposition that for purposes of negligent-entrustment liability, "[n]egligence is not synonymous with incompetency. The most competent [driver] may be negligent." *Pritchett v. ICN Medical Alliance, Inc.*, 938 So.2d 833, 941 (Ala. 2006). But the Utah Supreme Court's opinion in *Herland* seems to indicate that the standard for "incompetence" in this context is not as high as Kloepfer suggests. In that case, the court appears

11

to equate incompetence with carelessness: "a duty raises as a matter of common law where the owner should know about the entrustee's incompetence: If [a parent] ha[s] reason to believe that his son [is] a carless driver, from observation of his habits or otherwise, it would be his duty to deny the son the use of the car." 345 P.3d at 670 (citations and internal quotation marks omitted). In addition, the court in *Herland* favorably cites the following example of negligent entrustment from the Restatement (Second) on Torts: "A permits B, his chauffeur, who to his knowledge is in the habit of driving at an excessive speed, to use his car to take B's family to the seashore. While driving the care for this purpose, B drives at an excessive rate of speed and harms C. A is subject to liability to C." 345 P.3d at 670 (quoting Restatement (Second) on Torts § 390). Indeed, in summarizing the circumstances in which a motor-vehicle owner may be held liable under Utah law for injury caused by a permissive driver, Judge Howe concluded in *Lane v. Messer* that the owner will be liable if he "has negligently entrusted the vehicle to a driver that he knows or in the exercise of reasonable care should have known to be an incompetent, careless, reckless, . . . inexperienced" or "intoxicated." 731 P.2d 488, 491 (Utah 1986) (opinion of Howe, J.).

For these reasons, the court denies Kloepfer's motion for summary judgment on Plaintiff's negligent entrustment claim.

\* \* \*

The Court GRANTS Kloepfer's motion for summary judgment with respect to Plaintiff's respondeat superior and negligent hiring claims but DENIES that motion with respect to Plaintiff's negligent supervision and negligent entrustment claims. IT IS SO ORDERED.

DATED this 21st Day of October, 2019.

BY THE COURT:

*[signature]*

Howard C. Nielson, Jr.
United States District Judge