**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**
**NORTHERN DIVISION**

| | |
|---|---|
| SIOLIMI MAFUA,<br><br>Plaintiff,<br><br>vs.<br><br>KENT B. MCKENZIE; KLOEPFER, INC.; and DOES I-X,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO SET ATTORNEYS' FEES AND COSTS AWARDED RE SANCTIONS IMPOSED ON DEFENDANTS (DOC. NO. 64)**<br><br>Case No. 1:18-cv-00064-HCN-DAO<br><br>Judge Howard C. Nielson, Jr.<br><br>Magistrate Judge Daphne A. Oberg |

Before the court is the Plaintiff's Motion to Set Attorneys' Fees and Costs Awarded re: Sanctions Imposed on Defendants ("Mot."), (Doc. No. 64). Having considered the briefing and materials submitted for and against the motion, the court ORDERS Defendants Kent B. McKenzie and Kloepfer, Inc., (together, the "Kloepfer Defendants"), to pay Plaintiff Siomili Mafua $40,720 in attorneys' fees and $15,215 in costs incurred in litigating the spoliation issue.

## BACKGROUND

On December 15, 2017, Mr. Mafua and Mr. McKenzie were involved in a car accident in which Mr. Mafua sustained serious injuries. (Compl. ¶¶ 8–19, Doc. No. 2-1.) Mr. Mafua sued Mr. McKenzie for negligence and sued Mr. McKenzie's employer, Kloepfer, Inc., for negligence under a respondeat superior theory. (*Id.* ¶¶ 20–59.) The Kloepfer Defendants removed the case to federal court, asserting diversity of citizenship and damages in excess of $75,000. (Notice of Removal 1–2, Doc. No. 2.)

1

One of the primary issues in the case was whether Mr. Mafua was entitled to punitive damages from the Kloepfer Defendants based on Mr. McKenzie's alleged use of a cell phone or employer-issued iPad at the time of the accident. (*See, e.g.*, Defs.' Mot. for Partial Summ. J. re: Punitive Damages 1–2, Doc. No. 36; *see also* Kent B. McKenzie's Renewed Mot. for Partial Summ. J. re: Punitive Damages ("Renewed Summ. J. Mot.") 1–5, Doc. No. 46.) A second and related issue was whether the Kloepfer Defendants engaged in spoliation of evidence with respect to the cell phone and iPad. (Mot. on Spoliation of Evidence and Requested Adverse Inference ("Spoliation Mot.") 1–2, Doc. No. 16.) The cell phone in Mr. McKenzie's possession at the time of the accident was destroyed and the iPad lost, leading Mr. Mafua to request an adverse inference that Mr. McKenzie was "inappropriately distracted by his cell phone (or iPad) at the time of the subject collision." (*Id.*)

On January 9, 2020, the court held a hearing on both the spoliation and punitive damages issues and found "spoliation of the evidence occurred here." (*See* Ex. A to Mot. for Proposed Court Remedy and Sanctions re: Spoliation of Evidence ("Spoliation Remedy Mot."), Tr. of Hearing on Mot. at 69:16–17, Doc. No. 51–1; *see also* Minute Order, Doc. No. 44.) Subsequently, Mr. Mafua sought attorneys' fees and costs associated with the spoliation of evidence issue. (Spoliation Remedy Mot. 7, Doc. No. 51.) He also asked the court to "permit the parties to present evidence and argument to the jury regarding the loss of the relevant information" on the cell phone and iPad, and requested a jury instruction "regarding the spoliation of evidence ruling." (*Id.* at 1–2.)

Mr. McKenzie renewed his motion for summary judgment on punitive damages, having addressed evidentiary deficiencies identified by the court during the January 9, 2020 hearing. (*See* Renewed Summ. J. Mot. 1–2, Doc. No. 46; *see also* Docket Text Order, Doc. No. 45.)

During an April 22, 2020 hearing, the court considered the Renewed Summary Judgment Motion, (Doc. No. 46), and the Spoliation Remedy Motion, (Doc. No. 51). (*See* Minute Order, Doc. No. 61.) The court granted both motions. (*Id.*) With respect to spoliation, the court awarded Mr. Mafua "his costs and attorneys' fees incurred in litigating the spoliation issue," though it required Mr. Mafua to "segregate and exclude costs and attorneys' fees incurred in opposing the motion and renewed motion for summary judgment on punitive damages." (*Id.*) The court also ruled that the parties could "present evidence and argument to the jury regarding the loss of potentially relevant information from Mr. McKenzie's smartphone and the disappearance of the tablet." (*Id.*)

With the instant motion, Ms. Mafua seeks $48,800 in attorneys' fees and $19,005 in costs associated with the spoliation issue, for a total of $67,805. (Mot. 1, Doc. No. 64.) The Kloepfer Defendants argue this amount is unreasonable and should be reduced to $20,000 total. (Defs.' Mem. in Opp'n to Pl.'s Mot. to Set Att'ys' Fees and Costs Awarded re: Sanctions Imposed on Defs. ("Opp'n") 2, Doc. No. 67.)

## LEGAL STANDARD

Because the court sits in diversity, it applies the law of the forum state—in this case, Utah. *See Boyd Rosene & Assocs. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999). While there is no "set formula" for determining what constitutes reasonable attorneys' fees, the Utah Supreme Court has identified four questions a court should consider in evaluating a fee request:

1. What legal work was actually performed?
2. How much of the work performed was reasonably necessary to adequately prosecute the matter?
3. Is the attorney's billing rate consistent with the rates customarily charged in the locality for similar services?
4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?

*Dixie State Bank v. Bracken*, 764 P.2d 985, 989–90 (Utah 1988). These four questions encapsulate a wider array of considerations Utah courts have used to evaluate the reasonableness of fee requests. *Id.* at 990. These broader considerations include the "amount in controversy," "the extent of services rendered," "the relationship of the fee to the recovered amount," and "the overall result achieved." *Id.* at 989 (internal quotations omitted). With respect to the fourth question laid out in *Dixon*, the Code of Professional Responsibility outlines factors informing reasonableness, including "the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly"; the likelihood the engagement will preclude other employment; "the nature and length of the professional relationship with the client"; "the experience, reputation, and ability of the lawyer or lawyers performing the services"; and "whether the fee is fixed or contingent" among others. Utah Rules of Prof'l Conduct R. 1.5 (2020).

"An award of attorney fees must be based on the evidence and supported by findings of fact." *Cottonwood Mall Co. v. Sine*, 830 P.2d 266, 268 (Utah 1992). The party seeking the award bears the burden of producing evidence to support the request, including evidence about "the hours spent on the case, the hourly rate or rates charged for those hours, and usual and customary rates for such work." *Id.* The moving party can meet its burden with respect to rates charged by providing "satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably compared skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

4

## DISCUSSION

The court considers the parties' arguments under the rubric outlined in *Dixie State Bank*.[1] 764 P.2d at 990.

**A. What Legal Work Was Actually Performed?**

Darren Davis, a senior partner at Adams Davis, P.C., along with York Major and Christian Cueva, associates at Adams Davis, P.C., serve as counsel to Mr. Mafua. (Ex. A. to Mot., Davis Aff. ¶¶ 3, 6–8, Doc. No. 64-1.) They allege they collectively devoted 137 hours to the spoliation issue. (*Id.* ¶ 11.) In contrast, the Kloepfer Defendants argue twenty-one hours of this time does not fall under the court's April 22, 2020 order: namely, nine hours in deposition time and twelve hours attributed to this motion.[2] (Opp'n 4–5, Doc. No. 67.) The Kloepfer Defendants also claim a portion of the litigation costs fall outside of the court's April 22, 2020 order. (*Id.* at 5.) The court analyzes the motions related to the spoliation issues first and then turns to the challenged deposition time and litigation costs.

1. <u>Spoliation Motions</u>

Mr. Mafua's counsel purports to have spent approximately eighty-eight hours, culminating in five motions related to the spoliation issue. (*See* Ex. 1 to Davis Aff., Attorney Time Reports, Doc. No. 64-1 at 11–12, 14–15, 19.) First, Mr. Davis and Mr. Cueva allege they spent twenty hours on "[i]nvestigation & discovery, pleadings/briefs/motions, litigation strategy & analysis, conference, review/preparation, legal research, . . . reading depositions," and drafting and editing the Spoliation

---

[1] At the conclusion of its analysis of the first three questions from *Dixie State Bank*, 764 P.2d at 990, the court finds no additional circumstances requiring consideration. Consequently, the court does not separately analyze additional information under the fourth question.
[2] The Kloepfer Defendants also challenge the reasonableness of Mr. Mafua's preparation for the April 22, 2020 hearing. (Opp'n 4, Doc. No. 67.) The court addresses this challenge in its discussion of the second question articulated in *Dixie State Bank*, 764 P.2d at 990.

Motion. (*Id.* at 11.) The work associated with the Spoliation Motion includes the development of evidence associated with the motion as well as its drafting and finalization. (*Id.*) The Spoliation Motion is well-researched and includes evidentiary support in the form of deposition excerpts, discovery responses, insurance documents, a Kloepfer, Inc., training and safety document, communications regarding preservation, and expert analysis from Mr. Ira Victor. (*See* Spoliation Mot. 2–6, Doc. No. 16.) Based on the evidence submitted, twenty hours is a fair representation of the time spent by Mr. Davis and Mr. Cueva on the Spoliation Motion.

Mr. Mafua's counsel claims to have spent eighteen hours on the Reply in Support of Motion on Spoliation of Evidence and Requested Adverse Inference ("Spoliation Reply"), (Doc. No. 20). (*See* Ex. A to Mot., Davis Aff. ¶ 16, Doc. No. 64-1.) The description of work associated with the Spoliation Reply is very similar to the description of work supporting the Spoliation Motion. (*See* Ex. 1 to Davis Aff., Attorney Time Reports, Doc. No. 64-1 at 12 (including "[i]nvestigation, discovery, pleadings/briefs/motions, litigation strategy & analysis, conference, review/preparation, legal research, reading depositions, reading Defendants' opposition brief" and drafting and editing the reply).) The Spoliation Reply included an affidavit from Mr. Victor to rebut the defendant's expert as well as additional argument. (Spoliation Reply, Doc. No. 20.) However, in the Spoliation Reply itself, Mr. Mafua adds no additional factual assertions, instead citing back to the statement of facts in the Spoliation Motion.

This runs counter to Mr. Mafua's lawyers' time entries for the reply, which include references to "discovery" and "reading depositions." (*See* Spoliation Reply 3–10, Doc. No. 20; *see also* Ex. 1 to Davis Aff., Attorney Time Reports, Doc. No. 64-1 at 12.) Given that there is no support in the motion itself for the work of "discovery" and "reading depositions," there is insufficient evidentiary support for all eighteen hours of work purportedly performed in support of the Spoliation Reply. Work to

complete the motion such as strategy, analysis, legal research, drafting, and revising is supported by the time records and the contents of the motion itself. However, the imprecision and vagueness of the time entries precludes the court from segmenting out the work actually performed from the work lacking evidentiary support. Consequently, the court makes a reasoned estimate and deducts the total time allocated for this motion by ten percent, apportioned equally between Mr. Davis and Mr. Cueva.

Mr. Mafua's counsel next allege they spent twenty hours on the Spoliation Remedy Motion, (Doc. No. 51). (*See* Ex. A to Mot., Davis Aff. ¶ 18, Doc. No. 64-1.) Notably, this motion focuses on obtaining the court's allowance to present evidence to the jury regarding spoliation as well as a jury instruction regarding spoliation. (Spoliation Remedy Mot. 1–2, Doc. No. 51.) It also sought attorneys' fees and costs. (*Id.* at 7.) Mr. Mafua attached one exhibit to the Spoliation Remedy Motion, the January 9, 2020 hearing transcript. (*Id.* at 2.) The Spoliation Remedy Motion primarily recounted case law regarding the policy implications of spoliation as well as excerpts from the January 9, 2020 hearing on the spoliation issue. (Spoliation Remedy Mot. 1–7, Doc. No. 51.) The time entries of Mr. Mafua's counsel for the Spoliation Remedy Motion are remarkably similar to those associated with the prior two motions. Mr. Davis and Mr. Cueva state their work included "[i]nvestigation & discovery, pleadings/briefs/motions, litigation strategy & analysis, conference, review/preparation, legal research, reading depositions," and drafting and editing the motion. (*See* Ex. 1 to Davis Aff., Attorney Time Reports, Doc. No. 64-1 at 14.)

Reviewing Spoliation Remedy Motion itself, there is no evidence supporting the work of "investigation & discovery, pleadings/briefs/motions," and "reading depositions," nor is it clear how much time was dedicated to these discreet tasks. Given these deficits, there is insufficient evidentiary support for all twenty hours of work Mr. Mafua's counsel claims to have done in support of the Spoliation Remedy Motion. The court estimates the work done—i.e., strategy, analysis, conference,

7

legal research, drafting, and editing—versus the work that lacks evidentiary support—i.e., discovery, "pleadings/briefs/motions," and reading depositions—and deducts the total time allocated for this motion by twenty percent, apportioned equally between Mr. Davis and Mr. Cueva.

Next, Mr. Mafua's counsel alleges they spent eighteen hours on the Reply in Support of Motion for Proposed Court Remedy and Sanctions re: Spoliation of Evidence ("Spoliation Remedy Reply"), (Doc. No. 58). (*See* Ex. A to Mot., Davis Aff., ¶ 19, Doc. No. 64-1.) This motion is approximately five pages in length and includes no exhibits. (Spoliation Remedy Reply 1–5, Doc. No. 58.) The time entries for the Reply Remedy Motion state Mr. Davis and Mr. Cueva performed the following work related to the motion: "[i]nvestigation, discovery, pleadings/briefs/motions, litigation strategy & analysis, conference, review/preparation, legal research, reading depositions, reading Defendants' opposition brief," and drafting and reviewing the motion. (*See* Ex. 1 to Davis Aff., Attorney Time Reports, Doc. No. 64-1 at 15.) The entries for Mr. Cueva and Mr. Davis are almost identical, with the deviation being the supervision of work and revisions conducted by Mr. Davis. (*Id.*) As before, these time entries are vague and do not specify the time allocated to each task. The motion and its subject matter fail to support work related to "investigation, discovery," "pleading/briefs/motions," and "reading depositions." (*Id.*) Given these deficiencies, the court again finds insufficient evidentiary support for all eighteen hours of work purportedly performed to complete the Spoliation Remedy Motion. The court reduces the total number of hours allocated to this motion by thirty percent, distributed equally between Mr. Cueva and Mr. Davis.

Finally, Mr. Mafua's counsel states they spent twelve hours on the instant motion. (Ex. 1 to Mot., Davis Aff. ¶ 23, Doc. No. 64-1.) The defendants argue this motion is beyond the scope of the court's order. (Opp'n 4–5, Doc. No. 67.) Mr. Mafua responds that this motion was necessary because the defendants rejected their initial proposal of fees and costs. (Reply in Support of Mot. to

8

Set Att'ys Fees and Costs Awarded re: Sanctions Imposed on Defs. ("Reply") 7, Doc. No. 70.) However, the court's April 22, 2020 order awarding attorneys' fees and costs did not contemplate the inclusion of the instant motion. (*See* Minute Order, Doc. No. 61.) The court's award of fees accounts for the spoliation motions already filed at the time of the April 22, 2020 hearing; it does not contemplate future motions. Consequently, the court excludes $4,400 associated with the instant Motion in setting Mr. Mafua's fees and costs. (Mot. 9, Doc. No. 64.)

    2. <u>Depositions</u>

Next, the Kloepfer Defendants challenge nine hours of time Mr. Mafua's counsel spent on depositions, claiming it was related to general discovery. (Opp'n 4, Doc. No. 67; *see also* Ex. A to Mot., Davis Aff., ¶ 22, Doc. No. 64-1.) This challenge fails. The time allocated by Mr. Mafua to the spoliation issue was limited to a percentage of the overall time spent in six depositions. (*See* Ex. 1 to Davis Aff., Attorney Time Reports, Doc. No. 64-1 at 18; *see also* Reply 7, Doc. No. 70 (indicating that nine hours accounts for twenty percent of the five depositions and two hours for the deposition of defendant's forensic expert). The five depositions included in the fee request—those of Karl Kloepfer, Kent McKenzie, Michael Landrum, John Kloepfer, and Larry Kloepfer—were cited in Mr. Mafua's Spoliation Motion. (*See* Spoliation Mot. 3–6, Doc. No. 16.) The deposition of Scott Tucker was not used by Mr. Mafua in the spoliation motions, but Mr. Tucker's declaration was offered by the Kloepfer Defendants in opposing a finding of spoliation. (*See* Mem. in Opp'n to Pl.'s Mot. on Spoliation of Evidence and Requested Adverse Inference 7, 10, Doc. No. 19.) As such, Mr. Mafua's inclusion of approximately two hours of time from Mr. Tucker's deposition in his fee request appears reasonable and supported by the record. Based on the proffered evidence, the court finds the deposition testimony allocated reasonable for the purpose of litigating the spoliation issue.

### 3. Litigation Costs

Finally, the Kloepfer Defendants take issue with Mr. Mafua's litigation costs, specifically some invoices submitted for Mr. Ira Victor, a digital forensic expert. (Opp'n 5, Doc. No. 67.)[3] Mr. Mafua seeks $19,005 in costs associated with Mr. Victor's work, but the Kloepfer Defendants state that only $2,950 for invoice number 3255 and $10,300 for invoice number 3269 are attributable to the spoliation issue. (*See* Mot. 9–10, Doc. No. 64; Opp'n 5, Doc. No. 67.) The Kloepfer Defendants claim the remaining invoices from Mr. Victor were for "general work as an expert witness on the case, not specifically for work on Plaintiff's Motion [regarding] spoliation." (Opp'n 5, Doc. No. 67.) In reply, Mr. Mafua argues "Mr. Victor was retained *solely* for the purpose of litigating the spoliation issue, nothing else." (Reply 8, Doc. No. 70 (emphasis in original).)

Both parties' representations are lacking. The Kloepfer Defendants' reading of the court's April 22, 2020 order and Mr. Victor's invoices is too narrow. In addition to Mr. Victor's work on the spoliation motions, the court's order allowed for fees and costs associated with the spoliation issue, a broader scope. (Minute Order, Doc. No. 61.) Mr. Mafua's assertions regarding the scope of Mr. Victor's work are also inaccurate. Mr. Mafua utilized Mr. Victor's expert report in response Mr. McKenzie's summary judgment motion on punitive damages. (Opp'n to Renewed Summ. J. Mot. 4, Doc. No. 50.) The court's April 22, 2020 order requires segregation of any summary judgment fees and costs from spoliation fees and costs. (*See* Minute Order, Doc. No. 61.)

---

[3] Neither party directs the court to the standard applicable to determining litigation costs associated with a retained expert. (*See* Mot. 3–4, 9–10, Doc. No. 64; *see also* Opp'n 3, Doc. No. 67.) Both parties appear to assume that the same analysis applicable to awards of attorneys' fees applies to the award of costs. This position has some support in Utah's case law. *See Dahl v. Dahl*, 2015 UT 79, ¶¶ 176, 181 (setting forth the standard for evaluating the reasonableness of attorneys' fees and then analyzing costs associated with a retained expert); *cf. Baldwin v. Burton*, 850 P.2d 1188, 1199–1201 (Utah 1993) (upholding the trial court's award of costs associated with paralegal work utilizing the analysis applicable to the reasonableness of attorneys' fees).

Upon review of the invoices, the court finds $15,465 of Mr. Victor's invoices can be reasonably attributed to the spoliation issue.[4] Invoice number 3180 has three entries for "meet and confer planning" totaling $275 that are not attributable to the spoliation issue on their face. (Ex. 2 to Davis Aff., Privacy Technician Invoices, Doc. No. 64-1 at 21.) Invoice number 3212 has a May 21, 2019 entry of $275 for reading and signing the protective order that should be excluded from the award. (*Id.* at Doc. No. 64-1 at 23.) Invoice number 3237 has an entry for $165 for "prep, meet and confer" and an entry for $250 for "[c]alls with Oxygen; communications with client," which are not clearly associated with the spoliation issue. (*Id.* at Doc. No. 64-1 at 24.) Invoice number 3307 for $2,825 is related to work on Mr. Victor's rebuttal expert report. (*Id.* at Doc. No. 64-1 at 27; *see also* Ex C. to Pl.'s Designation of Rebuttal Expert Witnesses, Rebuttal Report (Nov. 6, 2019), Doc. No. 35-3.) Mr. Victor's rebuttal expert report was finalized after the Spoliation Motion was filed, the only spoliation motion relying on discovery for support. (Ex C. to Pl.'s Designation of Rebuttal Expert Witnesses, Rebuttal Report (Nov. 6, 2019), Doc. No. 35-3.); Spoliation Mot., Doc. No. 16.) Without more, it appears Mr. Victor's work on the rebuttal report is unrelated to the spoliation issues subject to the April 22, 2020 order.[5] (*See* Minute Order, Doc. No. 61.) In sum, Mr. Mafua has not met his evidentiary burden to show that $3,790 of Mr. Victor's costs are attributable to the spoliation issue.

The remaining costs appear appropriately incurred as part of the spoliation litigation. Affidavits from Mr. Victor were used in support of Mr. Mafua's Spoliation Motion and Spoliation

---

[4] With respect to litigation costs, Mr. Mafua argues the Kloepfer Defendants cannot cite to "any case law or authority that indicate that such costs are conditional or can be segregated." (Reply 8, Doc. No. 70.) However, the court's April 22, 2020 order provides for the segregation of costs. (*See* Minute Order, Doc. No. 61.)

[5] The work on a report identified in invoice number 3307 is dated between October 24 and October 31, 2019. Mr. Victor's rebuttal expert report is dated November 6, 2019. (*See* Ex. 2 to Davis Aff., Privacy Technician Invoices, Doc. No. 64-1 at 27; *see* Ex C. to Pl.'s Designation of Rebuttal Expert Witnesses, Rebuttal Report 1, Nov. 6, 2019, Doc. No. 35-3.)

11

Reply. (*See* Ex. I to Spoliation Mot., Victor Aff., July 16, 2019, Doc. No. 16-9; *see also* Ex. M. to Spoliation Reply, Victor Reply Aff., Aug. 16, 2019, Doc. No. 20-1.) Invoice numbers 3255 and 3269, associated with these affidavits, are included in the cost total here with no objection from the Kloepfer Defendants. (*See* Ex. 2 to Davis Aff., Privacy Technician Invoices, Doc. No. 64-1 at 25–26; Opp'n 5, Doc. No. 67.) The remaining costs relate to the spoliation issues, including research regarding the damaged phone, review of documents related to preservation and repairs, drafting forensic production requests, and examining device hard drives. (*See* Ex. 2 to Davis Aff., Privacy Technician Invoices, Doc. No. 64-1 at 21–24.)

In sum, Mr. Mafua meets his evidentiary burden for most, but not all, of the fees and costs he seeks. Certain fees claimed for the Spoliation Reply (Doc. No. 20), the Spoliation Remedy Motion, (Doc. No. 51), and the Spoliation Remedy Reply (Doc. No. 58) have insufficient factual support. Consequently, the court reduces the amount sought for these motions by a total of $3,680. Where fees associated with the instant motion were not contemplated by the April 22, 2020 order, the court excludes $4,400 from Mr. Mafua's fee request. Finally, there is insufficient evidence that $3,790 of litigation costs for Mr. Victor's work are attributable to the spoliation issue; thus, the court excludes these costs.

### B. How Much of the Work Performed Was Reasonably Necessary to Adequately Prosecute the Matter?

Mr. Mafua alleges the fees and costs he seeks are "entirely reasonable under the circumstances of the case, and [are] fair compensation directly related to the work incurred in litigating the spoliation issue." (Mot. 4, Doc. No. 64.) He offers an affidavit from his attorney, Mr. Darren Davis, in support. (Ex. A to Mot., Davis Aff., Doc. No. 64-1.) He also offers the affidavit of Mr. Jeffrey D. Gooch, an experienced plaintiff's side personal injury litigator. (Ex. 2 to Mot., Gooch Aff. ¶¶ 1, 7, Doc. No. 64-2.) Having reviewed the attorneys' fees claimed with

the instant motion, Mr. Gooch opined the fees "incurred in litigating the spoliation issue are reasonable and necessary to adequately and competently litigate the spoliation issue and are consistent with the rates customarily charged at comparable personal injury law firms in Utah and in the locality for similar services involving litigation matters similar to this case." (*Id.* ¶ 7, Doc. No. 64-2.)

In response, the Kloepfer Defendants challenge the reasonableness of ten hours' preparation time for the April 22, 2020 hearing because no oral argument was held. (*See* Opp'n 4, Doc. No. 67.) They also challenge reasonableness based on the result achieved and in comparison with their attorneys' fees "for the same work." (*Id.* at 3–4.)

The court considers these arguments in turn. First, the Kloepfer Defendants challenge the reasonableness of time spent in preparation for an April 22, 2020 hearing since the court issued its rulings without argument from the parties. (Opp'n 4, Doc. No. 67.) The hearing at issue dealt with the Spoliation Remedy Motion, the Renewed Summary Judgment Motion, and a scheduling motion. (Minute Order, Doc. No. 61.) Mr. Mafua's counsel claims to have spent ten hours preparing specifically for the spoliation issue and participating in the April 22, 2020 hearing. (*See* Ex. 1 to Davis Aff., Attorney Time Reports, Doc. No. 64-1 at 16.) The associated time sheet includes a generalized description of work from Mr. Davis including a "[r]eview [of] pleadings/briefs/motions, litigation strategy & analysis, conference, review/preparation, legal research, reading depositions, court preparation time, court appearance via telephone (0.15 hours in court)." (*Id.*) The entry for Mr. York includes the same summary with the addition of "drafting oral argument outline." (*Id.*) The time entry includes an indication that the time was focused on the spoliation issue with a parenthetical, "(Spoliation of Evidence Issue)." (*Id.*)

13

Contrary to the Kloepfer Defendants' argument, Mr. Mafua's counsel acted reasonably in preparing for a hearing. The record does not indicate the hearing would not include oral argument. (*See* Notice of Hearing on Motion, Doc. No. 60.) And Mr. Mafua specifically requested oral argument on the Spoliation Remedy Motion. (Request to Submit for Decision 1–2, Doc. No. 59.) Given this, the fact that the court ultimately decided to issue a ruling without oral argument in no way makes counsel's preparatory work unreasonable. (Reply 7, Doc. No. 70.)

Second, the Kloepfer Defendants ask the court to consider the outcome obtained in litigating the spoliation issue in considering the reasonableness of fees. (Opp'n 3, Doc. No. 67.) They argue Mr. Mafua pursued spoliation "in the hope of maintaining a claim for punitive damages." (*Id.*) Because the Kloepfer Defendants prevailed in summary judgment on the issue of punitive damages, they argue Mr. Mafua only gained fees and costs in pursuit of spoliation— not a "great result" in the eyes of the Kloepfer Defendants. (*Id.*) This argument ignores a critical win for Mr. Mafua. In addition to a finding of spoliation and a fee award, the court allowed Mr. Mafua to "offer the jury instruction proffered by Plaintiff" at trial regarding spoliation and to admit evidence regarding the issue. (Minute Order, Doc. No. 61; *see also* Spoliation Remedy Mot. 6, Doc. No. 51 (proposed jury instruction language).)

Third, the Kloepfer Defendants argue the hours spent and the fees charged by Mr. Mafua's counsel are unreasonable when compared to their own counsel's fees and time spent on the same issue. (Opp'n 4, Doc. No. 67.) The Kloepfer Defendants' counsel claim to have spent approximately twenty-five hours on the spoliation issue for a total of $4,395 in fees. (*See* Ex. 1 to Opp'n, Ford Decl. ¶ 7, Doc. No. 67-1.) However, this comparison is not dispositive. Mr. Mafua is entitled to "hire [his] own counsel and make [his] own assessment of the time that [was] necessary for success." *Chevron Pipe Line Co. v. Pointe Perry, LC*, No. 2:08-cv-981, 2011 U.S. Dist. LEXIS 112092, at *7 (D. Utah

14

Sept. 29, 2011) (unpublished). "Evidence of the hours expended by opposing counsel may be helpful in determining whether time expended on a case was reasonable, but the opponent's time is not an 'immutable yardstick of reasonableness.'" *Shaw v. AAA Eng'g & Drafting, Inc.*, 213 F.3d 538, 543 (10th Cir. 2000) (quoting *Robinson v. City of Edmond*, 160 F.3d 1275, 1284 (10th Cir.1998)). In fact, it is "untenable" to assume that the "only reasonable amount of time would be the amount of time [the opposing] counsel spent." *See Feldman v. Prudential Ins. Co. of Am.*, No. 2:06-cv-315, 2008 U.S. Dist. LEXIS 10822, at *3 (D. Utah Feb. 11, 2008) (unpublished).

Mr. Mafua argues in reply that the Kloepfer Defendants' summation of hours spent "refus[es] to count several tasks that were required in litigating the spoliation of evidence issue." (Reply 6–7, Doc. No. 70.) It is true that whether the Kloepfer Defendants included depositions, expert consultation and preparation, and other investigative work in their summation of hours is unclear. (Ex. 2 to Opp'n, Ford Decl. ¶ 7, Doc. No. 67-1.) In contrast, Mr. Mafua's counsel included preparatory work in its totals with respect to the spoliation motions, including strategy, investigation, and some discovery. (*See* Ex. 1 to Davis Aff., Attorney Time Reports, Doc. No. 64-1 at 11–12, 14–15.) The court finds the expenditure of approximately 113.6 total hours to draft four motions, prepare for two hearings, consult with experts, participate in depositions, and prepare a litigation strategy around the spoliation issue to be reasonable.[6] There is no basis to conclude this time is unreasonable simply as it stands in comparison to the fees expended by the Kloepfer Defendants.

---

[6] In reaching the 113.6 hour total, the court excludes twelve hours for the Plaintiff's preparation of this motion, two hours related to the ten percent reduction in time on the Spoliation Reply (Doc. No. 20), four hours related to the twenty percent reduction for the Spoliation Remedy Motion, (Doc. No. 51), and approximately five point four hours related to the thirty percent reduction for the Spoliation Remedy Reply (Doc. No. 58).

### C. Is the Attorney's Billing Rate Consistent with the Rates Customarily Charged in the Locality for Similar Services?

Next, the court considers whether the rates charged by Mr. Mafua's counsel are consistent with those customarily charged in the locality for similar services. *Dixie State Bank*, 764 P.2d at 990. Mr. Mafua's counsel fees in this case are contingent. (Mot. 5, Doc. No. 64.) Mr. Davis charges $500 per hour; Mr. Major charges $300 per hour; and Mr. Cueva charges $200 per hour. (Ex. A to Mot., Davis Aff. ¶¶ 12–14, Doc. No. 64-1.) The Kloepfer Defendants argue these rates are "excessive and unreasonable," pointing to their own counsel's rate of $170 per hour. (Opp'n 4, Doc. No. 67.) Mr. Mafua's counsel justifies the higher rate as follows: "For a contingent fee representation to make economic sense for an attorney, the risk of receiving no fee whatsoever if the litigation is unsuccessful[] must be offset by the possibility of earning a sufficient fee in the event of a favorable outcome to justify the requisite time, effort and expense necessary to purse the claim to the end." (Mot. 5, Doc. No. 64; *see also* Reply 6, Doc. No. 70.)

The court's charge is to consider whether the rates at issue are consistent with rates "customarily charged in the locality for similar services." *Dixie State Bank*, 764 P.2d at 990. Consequently, the court looks at evidence of rates customarily charged in Utah for plaintiff's contingency fee work to determine the reasonableness of the fee request. The rates charged by Mr. Mafua's counsel are supported as reasonable by three affidavits. Mr. Gooch, an experienced litigation attorney, opined the rates of Mr. Davis, Mr. Major, and Mr. Cueva are "reasonable and consistent with the rates customarily charged at comparable personal injury firms in Utah for similar services in the current market." (Ex. 2 to Mot., Gooch Decl. ¶¶ 8–10, Doc. No. 64-2.) Ryan Christensen, an attorney with seventeen years of personal injury and commercial litigation experience, stated his standard rate "for work on plaintiff personal injury litigation cases . . . is $400.00 to $500.00 per hour and that is a reasonable rate for attorneys in this market practicing personal injury." (Ex. E

to Reply, Christensen Aff. ¶¶ 4, 10, Doc. No. 70-1.) And George Waddoups, the head of mass torts at Robert J. Debry & Associates, stated his "senior attorney standard hourly average billable rate is $450.00 to $550.00 per hour for work on plaintiff personal injury cases." (Ex. F to Reply, Waddoups Aff. ¶¶ 3, 12, Doc. No. 70-2.) Mr. Waddoups maintains that $450 to $550 per hour is "a reasonable rate for attorneys in this market practicing personal injury litigation." (*Id.* ¶ 12.) This evidentiary support for the rates charged by Mr. Mafua's counsel is sufficient to show they are consistent with rates customarily charged in Utah for similar services. *See Dixie State Bank*, 764 P.2d at 990.

## CONCLUSION

For the foregoing reasons, the court GRANTS IN PART and DENIES IN PART the Plaintiff's Motion to Set Attorneys' Fees and Costs Awarded re: Sanctions Imposed on Defendants, (Doc. No. 64). Having considered the evidence presented, the court ORDERS the Kloepfer Defendants to pay Mr. Mafua $40,720 in attorneys' fees and $15,215 in costs incurred in litigating the spoliation issue.

DATED this 6th day of October, 2020.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge